HOOFF v. LADD. See Case No. 6,669.

HOOFF (VIRGINIA v.). See Case No. 16,-962.

## Case No. 6,671.

### In re HOOK.

### [2 Dill. 92.] [1]

### Circuit Court, E. D. Missouri. 1872.

HOMESTEAD EXEMPTION STATUTE OF MISSOURI CONSTRUED—PREVIOUS DEBTS AND LIABILITIES.

The Missouri homestead-exemption statute provided that it "should not apply to any debts or liabilities contracted before" it took effect: Held, that where a public administrator gave an official bond and received personal property of the decedent before the homestead statute went into force, his liability to the heirs and distributees arose in such a sense as to deprive him of a homestead exemption in property acquired after he received the assets of the estate, although it did not appear that at the time the property claimed as a homestead was acquired, the administrator had then converted the assets of the estate which had come into his hands.

This cause is here under the second section of the bankrupt act to review an order of the district court for the Eastern district of Missouri. In 1861, the bankrupt [Zadok] Hook became the public administrator for Callaway county, Missouri, and gave an official bond, with sureties, for the faithful performance of his duties. See Hook v. Payne, 14 Wall. [81 U. S.] 253; Same Case, 7 Wall. [74 U. S.] 425. In February, 1861, he took upon himself the administration of the estate of one Fielding Curtis, and at that time received personal property to the amount of $75,000 belonging to the estate. Afterwards, the distributees and next of kin of the said Fielding Curtis brought suit against Hook and his sureties on the administration bond, and recovered judgment against him in this court for over $40,000, which remains unsatisfied, and which has been proved up in bankruptcy against Hook's estate. After the execution of the bond of Hook as public administrator, and after Hook obtained possession of the property of the estate of Fielding Curtis, but before any conversion of the property by Hook is shown to have occurred, Hook acquired the property in which he now claims a homestead right. On the 23d day of March, 1863, the Missouri homestead act was passed (Laws 1863, p. 21). This act gives a homestead right to the extent of $1,000; and it is provided by the act itself that it "shall not apply to any debts or liabilities contracted before" it took effect, which was on the 23d day of March, 1863. In 1869, the homestead property was sold by the assignee in bankruptcy, yielding a surplus of $2,400 after paying off the incumbrance upon it; and Hook filed in the bankruptcy court his petition for an order on the assignee to set aside and pay over to him $1,000, as exempt

to him in lieu of his homestead; and this petition was resisted by the distributees and next of kin of the said Fielding Curtis, who obtained against the bankrupt the aforesaid judgment.

Glover & Shepley and Mr. Meyers, for creditors.

W. B. Thompson and Henderson & Hayden, for bankrupt.

Before DILLON, Circuit Judge, and KREKEL, District Judge.

Construction of homestead exemption provisions. See Cox v. Wilder [Case No. 3,308], and cases cited in note.

## Case No. 6,672.

### In re HOOK.

### [11 N. B. R. 282.] [1]

### District Court, D. New Hampshire. 1874.

BANKRUPTCY—PROOF OF DEBT—PROMISSORY NOTES —ACCOMMODATION.

1. B. sought to prove against the bankrupt's estate, five promissory notes signed by C. and indorsed by the bankrupt. It appeared from the evidence that the bankrupt was in the practice of indorsing accommodation notes for C., and that the notes in question were given as security for such indorsements. The bankrupt indorsed and delivered them to H. for a consideration of about one-fifth of the face of the whole five. Some time thereafter, H. delivered them to B. without indorsing, for two lots of land valued at eight hundred or one thousand dollars, which he has never conveyed to H., but still holds. All the notes, except one, were overdue at the time of the transfer, and H. told B. that there was trouble between the bankrupt and C. Held, that the notes were without consideration as against C.'s estate, and could not be proved against it by the bankrupt for anything more than nominal damages, until he had been called upon to pay the notes he had indorsed for C.'s accommodation, nor by any one holding them without paying a valuable consideration, or with notice that there was no consideration therefor or in fraud of C.'s estate.

2. H. is chargeable with notice, for he was put on his inquiry by his knowledge of trouble between C. and the bankrupt, and by the exceedingly low figure at which the notes were sold; and if he neglected to inquire, he must be charged with all the knowledge he would have obtained if he had made inquiry or examination. B. does not stand any better in this respect than H., and he must be chargeable with notice of all the infirmities of the notes.

3. The notes in question cannot be proved for any sum.

Question as to proof of debt, certified to the court by Thomas E. Sawyer, register in bankruptcy.

CLARK, District Judge. The creditor, Bowley, seeks to prove against the estate of the bankrupt five promissory notes, all

---

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

[1] [Reprinted by permission.]

signed by Wm. Crawford, and all indorsed by the bankrupt, Leonard L. Hook, waiving demand and notice, as follows: March 13th, 1872, one thousand and forty dollars, on four months. March 30th, 1872, one thousand one hundred dollars, on five months. May 15th, 1872, one thousand five hundred dollars, on four months. May 24th, 1872, five hundred dollars, on five months. June 3d, 1872, one thousand two hundred dollars on demand—amounting to five thousand three hundred and forty dollars, exclusive of interest. Upon a hearing before the register on proofs submitted, the register was of the opinion that the whole of said claim should be disallowed; but, the creditor being dissatisfied therewith, an issue was framed and transmitted to the court for its decision. Upon a hearing before the court, it appeared that before and at the time these notes were given by Crawford to Leonard L. Hook, the bankrupt, he, the bankrupt, was in the practice of indorsing accommodation notes for Crawford; and these notes were given as security for such indorsements. There was no other or further consideration for them. The bankrupt kept them all in his hands until June, 1872 (precisely what day did not appear), and then indorsed and delivered them to Daniel Hook, for the sum of one thousand dollars or thereabouts, for the whole of them. Crawford, the maker of the notes, failed on the 17th of June, 1872.

The day before his failure, the 16th of June, Crawford sent two of these notes to the bankrupt, with information "that his (Crawford's) creditors were going to strike upon him," and he, the bankrupt, must take care of himself. Part of the notes were indorsed about the middle of June, 1872, and part in the last half of June; but all were so indorsed before they became due, except the one on demand, and that within sixty days after its date. Daniel Hook paid one thousand dollars for the whole of them. In August following, Daniel Hook delivered, without indorsing, all the notes to Bowley, the creditor, for two lots of land valued at eight hundred or one thousand dollars, which he has never conveyed to Hook or his assignee or bargainee, but still holds. All the notes at the time of delivery to Bowley were overdue, except one; and Daniel Hook then told Bowley there was trouble between Hook (Leonard L.) and Crawford. When Leonard Hook indorsed the notes to Daniel Hook, he, Leonard, had paid nothing upon the accommodation notes he had signed for Crawford. He does not remember that he told Daniel Hook what they were given for; "but he might;" said he proposed to sell them, and Daniel Hook told him what he would give for them, and then he indorsed them. Bowley did not know Leonard L. Hook was in bankruptcy. Upon these facts, I find,

First. That these notes were without consideration as against Crawford's estate, and could not be proved against it by Leonard Hook for anything more than nominal damages, until he had been called upon to pay upon the notes he had indorsed for Crawford's accommodation. Haseltine v. Guild, 11 N. H. 390; Lane v. Sleeper, 18 N. H. 211; Osgood v. Osgood, 39 N. H. 209. Nor by any one holding them ·without paying a valuable consideration therefor, or with notice that there was no consideration therefor, or in fraud of the bankrupt's (Crawford's) estate.

Second. I find that Daniel Hook must be chargeable with such notice; for if he had no actual notice, he was put on his inquiry by his knowledge of trouble between Crawford and Leonard Hook, and by the exceedingly low figure at which the notes were sold. And if he neglected to inquire, he must be charged with all the knowledge he would have obtained if he had made inquiry or examination. Oliver v. Piatt, 3 How. ·[44 U. S.] 333; Car v. Hilton [Case No. 2,437]; U. S. v. Sturges [Case No. 16,414]; Vattier v. Hinde, 7 Pet. [32 U. S.] 252; Godfrey v. Beardsley [Case No. 5,497]; Tardy v. Morgan [Id. 13,752]; Warren v. Swett, 31 N. H. 332; Dow v. Sayward, 14 N. H. 9; Cameron v. Little, 13 N. H. 26.

"What circumstances," says Story, "will amount to actual or constructive notice of any defect or infirmity in the title to the note, so as to let it in as a bar or defense against a holder for value, has been a matter of much discussion, and of no small diversity of judicial opinion. It is agreed on all sides that express notice is not indispensable; but it will be sufficient if the circumstances are of such a strong and pointed character as necessarily to cast a shade upon the transaction, and to put the holder upon inquiry." Story, Prom. Notes, p. 267, § 197. The selling of notes amounting to five thousand three hundred and ninety dollars for one thousand dollars, coupled with the knowledge by the indorsee that there was trouble between the maker and the payee, was quite sufficient "to cast a shade on this transaction and to put the indorser on his inquiry," and to charge him with notice of matters of defense against these notes which he must have learned upon such inquiry. I think that Daniel Hook must be charged with notice that these notes were without consideration as against Crawford and his estate, and he must also be charged with notice that Crawford was insolvent. If Crawford was insolvent, as he really was, and these notes were without consideration, it was a fraud upon Crawford's estate and creditors, and upon the bankrupt law [of 1867 (14 Stat. 517)], for Leonard Hook to dispose of them to a third person so that they might be collected; and it was equally a fraud on the part of such person so to receive them for such purpose. It tended to charge Crawford's estate with a large amount of debts for which it does not appear to be justly

chargeable; and to enable Leonard Hook to realize one thousand dollars out of these notes, upon which there was nothing due—for he had paid nothing for them, nor upon any of the accommodation notes which he had indorsed for Crawford. To this fraud Daniel Hook was a party; and the law will not protect him in it by now allowing him, if the notes were in his possession, to prove them against the estate of Leonard Hook. But the notes are not now in his possession. He has sold and assigned them to Bowley, the claimant. Does he stand any better in this particular than Daniel Hook? I think not. It is a very suspicious circumstance that he received these notes of Daniel Hook for two lots of land worth eight hundred or one thousand dollars, and that he has never deeded the land either to Hook or any one for his benefit. It looks as though he was seeking to enable Hook to realize upon these notes through him, and that he was making himself a party to the fraudulent transfer of the same.

Again, he must be chargeable with notice of all the infirmities of the notes. All but one were overdue and dishonored when he took them. And as to that one, he received it under such circumstances as should have put him on his inquiry about it. If he had inquired he would have learned that Leonard Hook was insolvent, and that the notes had been passed to Daniel Hook for a very inadequate consideration; and in fraud of Crawford's estate, to enable Leonard Hook to realize something upon them. He can stand, then, no better than Daniel Hook. They are really in his hands with knowledge of all the material facts in regard to them, and so far he has paid nothing for them. He agreed to convey two lots of land for them, but never did it. The delivery of them to him was really without consideration. To allow him to prove and recover anything upon them, even against Leonard Hook's estate, would be to lend the aid of the court to what was evidently a fraudulent transaction; and this cannot be done, even to allow him to prove for the amount which he agreed to pay. They cannot, in the opinion of the court, be proved for any sum. "Fraud corrupts and destroys the whole debt." "Every party to proceedings under the bankrupt law, must be held to the utmost good faith; and he who attempts a fraud cannot, if discovered, complain when he is made to abide the legal consequences of his acts." In re Elder [Case No. 4,326].